UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUSTIN LAMAR WINCH

VERSUS

FREEDOM MORTGAGE
CORPORATION, *et al.*

CIVIL ACTION

NO. 25-2469

SECTION M (2)

**<u>ORDER & REASONS</u>**

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Freedom Mortgage Corporation ("Freedom").[1]  Plaintiff Justin Lamar Winch responds in opposition.[2]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion to dismiss.  Within 14 days of the issuance of this Order & Reasons, Winch may file an amended complaint to cure the deficiencies of those claims dismissed without prejudice.

## I.     BACKGROUND

This action arises out of Winch's allegations that Freedom, its president and chief executive officer Stanley Middleman, and Halliday, Watkins & Mann, P.C. ("HWM"), a law firm that conducts foreclosure and debt-collection activities for Freedom, have engaged in systematic misconduct in the servicing and collection of mortgage loans insured by the Federal Housing Administration ("FHA").[3]  Winch brings the action on behalf of himself and others similarly situated.

---

[1] R. Doc. 10.
[2] R. Doc. 11.
[3] R. Doc. 1 at 2.

Winch first alleges that Freedom and Middleman engaged in a "systemic pattern of servicing misconduct" with respect to borrowers across jurisdictions, which Freedom long knew was violative of federal law.[4] He alleges that Freedom continues to misapply payments, impose unauthorized fees, create artificial delinquencies, manipulate escrow, and "advanc[e] loans toward foreclosure without lawful acceleration or meaningful review."[5] Winch's complaint says that Freedom and Middleman have been repeatedly sanctioned by "state financial regulators issuing consent orders that identify unauthorized fees, inaccurate disclosures, improper recordkeeping, unlicensed activity, and deceptive conduct toward borrowers."[6]

Winch also alleges that Freedom has engaged in misconduct with respect to his Freedom-serviced FHA loan.[7] He says his loan became delinquent in July 2025, but when he tried to schedule payments through Freedom's online payment portal, Freedom's portal "forced [him] to select a 'bundle' consisting of July, August, and September payments, plus inspection fees and late charges."[8] According to Winch, because the portal "prevented a lawful cure of the earliest delinquency," Freedom violated both federal servicing standards and Winch's right to reinstate.[9] Winch next states that Freedom locked him out of the payment portal entirely sometime in November 2025, and that Freedom fraudulently applied over $20,000 from Winch "to old payments which were supposed to have [been] placed at the end of the contractual periods."[10] Winch alleges that Freedom never issued a written acceleration notice and thus did not satisfy any Louisiana executory-process prerequisite.[11] He says that HWM sent him a letter "styled as an

---

[4] *Id.* at 4-5 (quote at 4).
[5] *Id.* at 5.
[6] *Id.* at 6.
[7] *Id.* at 7-13.
[8] *Id.* at 7.
[9] *Id.* at 7-8 (quote at 7).
[10] *Id.* at 8.
[11] *Id.* at 9-10.

'FDCPA NOTICE'" which did not indicate that foreclosure had been initiated.[12]  He also says that Freedom's online portal labeled his account as being in "Active Foreclosure" although Winch had not been served with any foreclosure pleading, and thus he remained contractually and legally entitled to reinstate.[13]  Finally, Winch alleges that Freedom assessed him property inspection fees and related charges "in the absence of any lawful trigger or necessity" and "engaged in confusing and inconsistent handling of escrow."[14]

On December 10, 2025, Winch filed the instant action, naming as defendants Freedom, HWM, Middleman, and John Does 1-25, said to be Freedom employees "who participated in or were responsible for the servicing and collection conduct alleged in [Winch's] Complaint."[15] Winch asserted claims: (1) against Freedom and Middleman for unsafe and unsound mortgage-servicing practices (Count I); (2) against HWM and Freedom for violations of the Fair Debt Collection Practices Act ("FDCPA") (Count II); (3) against Freedom for violations of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X (Count III); (4) against Freedom for violations of the Truth in Lending Act ("TILA") and Regulation Z (Count IV); (5) against all defendants for violations of the Louisiana Unfair Trade Practices Act ("LUTPA") (Count V); (6) for declaratory judgment against all defendants pursuant to 28 U.S.C. § 2201 (Count VI); (7) for injunctive relief against all defendants (Count VII); and (8) against Freedom and Middleman for fraud (Count VIII).[16]  Winch seeks to have the case certified as a class action.[17]

On February 10, 2026, after the Court denied Winch's request for a temporary restraining order,[18] HWM moved to dismiss Winch's claims against it pursuant to Federal Rule of Civil

---

[12] *Id.*
[13] *Id.* at 10.
[14] *Id.* at 11.
[15] *Id.* at 3-4 (quote at 4).
[16] *Id.* at 16-32.
[17] *Id.* at 13-16.
[18] R. Doc. 6.

Procedure 12(b)(6), which the Court granted as unopposed.[19]  On March 3, 2026, Freedom filed the instant motion to dismiss Winch's claims against it pursuant to Rule 12(b)(6).[20]

## II.    PENDING MOTION

Freedom makes nine arguments in its motion to dismiss.  First, Freedom argues that all eight counts which Winch asserts in his complaint are void of "specific facts which could plausibly give rise to a cause of action against Freedom."[21]  In response, Winch says that the detailed chronology he alleges exceeds the minimal pleading requirements of Rule 8.[22]

Second, Freedom argues that it does not owe the duty Winch claims (viz., "to provide financial accommodations, such as a repayment plan") because the note and mortgage in this case impose no such duty upon Freedom, and under Louisiana law, a financial institution only owes its borrowers a duty to adhere to the contract between them.[23]  Winch does not directly address this argument.

Third, Freedom argues that Winch's RESPA claim is insufficiently alleged for two reasons: (1) because Winch does not allege any facts related to his loan modification request, including when and how it was submitted; what documents were included; or that it satisfied the requirements of 12 C.F.R. § 1024.41, and (2) because Winch does not allege any facts that enable the Court to draw the reasonable inference that the loan modification application he submitted to Freedom was his first complete loss mitigation application.[24]  Winch responds that Freedom's assertion that he failed to allege the submission of a complete loss mitigation application is

---

[19] R. Docs. 7 (HWM's motion to dismiss); 9 (order granting the motion to dismiss HWM as unopposed).
[20] R. Doc. 10.
[21] R. Doc. 10-1 at 4.
[22] R. Doc. 11 at 4-5.
[23] R. Doc. 10-1 at 4-7.
[24] Id. at 7-8.

4

incorrect, and then provides the date of transmission of the application and attaches the loss mitigation application and email transmitting same.[25]

Fourth, Freedom argues that Winch has not alleged any actual damages as a result of any RESPA violation, which are a necessary element of a RESPA claim.[26] Winch does not directly address this argument in his opposition.

Fifth, Freedom argues that it does not meet the statutory definition of a debt collector, so Winch's FDCPA claim must be dismissed.[27] Winch responds that Freedom made misleading statements about the legal status of the debt; that HWM identified itself as a debt collector to him, which triggered FDCPA protections; and that "entities enforcing security interests can still be subject to the FDCPA if they [do not] otherwise meet the definition of a debt collector."[28]

Sixth, Freedom argues that Winch's claims are barred under the Louisiana Credit Agreement Statute ("LCAS"), La. R.S. 6:1121-1124, which prohibits causes of action arising out of credit agreements unless the agreement is in writing.[29] Freedom reasons that the LCAS bars all of Winch's claims because, although Winch alleges his entitlement to loss mitigation options with Freedom, he has not produced a written agreement requiring loss mitigation.[30] Winch responds that his claims are not barred because "they arise from alleged statutory violations and deceptive servicing conduct" rather than from an oral agreement to modify the loan.[31]

---

[25] R. Docs. 11 at 3-5; 11-1 (Winch's loss mitigation application); 11-2 (email from Winch transmitting loss mitigation application).

[26] R. Doc. 10-1 at 8-10.

[27] *Id.* at 10-11.

[28] R. Doc. 11 at 5-6 (quote at 6) (citing *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006)).

[29] R. Doc. 10-1 at 11-13.

[30] *Id.* at 13.

[31] R. Doc. 11 at 6.

Seventh, Freedom argues that Winch's cause of action for declaratory relief is improper because there is no actual controversy between him and Freedom.[32]  Winch does not directly address this argument in his opposition.

Eighth, Freedom argues that Winch's TILA claims fail as a matter of law because he has failed to identify any specific TILA violations and does not plead any facts that would constitute a TILA violation by Freedom.[33]  Winch responds that because his complaint "alleges inaccurate accounting of escrow balances, inspection fees, and corporate advances that distorted the reinstatement amount," he plausibly states a claim under TILA.[34]

Ninth and finally, Freedom argues that Winch has failed to meet the heightened pleading standard applicable to his claim for fraud because he did not plead any specific facts supporting a claim of fraud.[35]  Winch does not directly address this argument in his opposition.

## III.    LAW & ANALYSIS

### A.  Legal Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

[32] R. Doc. 10-1 at 13-14.
[33] R. Doc. 10-1 at 14-15.
[34] R. Doc. 11 at 6.
[35] R. Doc. 10-1 at 15.

of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Analysis of Winch's Claims Against Freedom**

**1. Winch's claim against Freedom for unsafe and unsound mortgage-servicing practices (Count I) is dismissed without prejudice because Winch has not plausibly stated a claim for relief.**

In Count I, Winch asserts that Freedom (along with the individual defendant, Middleman) is liable to him for "unsafe and unsound mortgage-servicing practices threatening the integrity of a Ginnie Mae-insured loan."[36] Winch's complaint states that his mortgage loan is "subject to HUD

---

[36] R. Doc. 1 at 16.

servicing standards and the Ginnie Mae MBS Guide," and that "Freedom is contractually obligated to comply with HUD Handbook 4000.1, 24 C.F.R. Part 203, applicable FHA servicing guidelines, and the Ginnie Mae MBS Guide, including obligations to maintain accurate, auditable records; properly apply payments; follow default-mitigation hierarchies; and avoid unsafe or unsound practices."[37]  He further asserts that such "federal servicing standards are incorporated into Plaintiff's Note, Security Instrument, and the federal insurance and pooling agreements covering his loan."[38]  Winch goes on to allege a series of failures in Freedom's management of his escrow account.[39]

Freedom argues that it owes no special duty to Winch because the note and mortgage impose no such duty upon Freedom, and the financial institution only owes its borrowers a duty to adhere to the contract between them.[40]  Winch does not specifically respond to this argument.  The Court agrees that "'[i]n Louisiana, it is clear that a financial institution only owes to a borrower the duty of complying with the contract between the institution and the borrower [and that] no fiduciary duty of loyalty exists between the financial institution and the borrower.'" *Guillory v. Carrington Mortg. Servs., LLC*, 2024 WL 1020555, at *17 (M.D. La. Mar. 8, 2024) (quoting *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002)).  Therefore, to the extent Winch's claim rests on a fiduciary duty he says Freedom owes to him, Winch has not stated a plausible claim for relief.

But, especially at the motion-to-dismiss stage, the Court cannot say with certainty that Winch's claim in Count I arises *solely* from allegations that Freedom breached a fiduciary duty. Winch's complaint alleges that "Freedom is *contractually* obligated to comply with" various

---

[37] *Id.* at 16-17.
[38] *Id.* at 17.
[39] *Id.* at 18-23.
[40] R. Doc. 10-1 at 16.

federal servicing standards.[41]    Winch further alleges that "federal servicing standards are *incorporated* into Plaintiff's Note, Security Instrument, and the federal insurance and pooling agreements governing his loan."[42]  In other words, Winch appears to assert that Freedom violated "'the duty of complying with the contract between the institution and the borrower.'"  *Id.*  Winch did not attach the note or security instrument to his complaint, nor did he point to any specific provision in the mortgage contract obligating Freedom to comply with any federal regulation, guideline, or servicing standard.  Further, although Winch claims that his complaint alleges "a detailed chronology" of misconduct by Freedom, it is unclear exactly what practices he alleges are violative of which specific federal regulations.  In other words, Winch fails to specifically allege which conduct is violative of which specific provisions.  At this stage of the proceeding, Count I of Winch's complaint fails to state a plausible claim for relief under Rule 8 because it does not "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).   As Winch's complaint fails to make clear both a source of the duty that Winch alleges Freedom breached and the specific contractual or federal provisions Winch alleges Freedom has violated, Count I is dismissed without prejudice.

> **2.  Winch's claim against Freedom for violations of the Fair Debt Collection Practices Act (Count II) is dismissed with prejudice because Freedom is not a "debt collector" within the meaning of the statute.**

In Count II, Winch asserts a claim against Freedom for violations of the Fair Debt Collection Practices Act for "falsely representing, directly and indirectly, that [his] loan was in 'Active Foreclosure' when no lawful acceleration had occurred and no foreclosure proceeding had been initiated."[43]  Freedom argues that Count II should be dismissed because Freedom does not

---

[41] R. Doc. 1 at 16 (emphasis added).
[42] *Id.* at 17 (emphasis added).
[43] R. Doc. 1 at 23.

meet the FDCPA's definition of a "debt collector," a necessary prerequisite for a claim under the FDCPA to proceed against a defendant.[44]  Specifically, it says that the term "debt collector" under the FDCPA does not include lendors, creditors, mortgage servicing companies, or assignees of a debt as long as the debt was not in default at the time it was assigned.[45]

To state a claim under the FDCPA, a plaintiff must allege facts sufficient to show that the defendant is a debt collector as defined by the FDCPA.  *See LaBranch v. Nestor I, LLC*, 2019 WL 13222969, at *4 & n.57 (E.D. La. Apr. 29, 2019) ("The threshold determination for stating an FDCPA claim is whether the defendants fall under the statute's definition of a 'debt collector.'") (citing, *inter alia*, *Brown v. Morris*, 243 F. App'x 31, 36 (5th Cir. 2007)).  A debt collector is "any person … in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Expressly exempted from this definition, however, is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person."  *Id.* § 1692a(6)(f).  The Fifth Circuit has specifically recognized that mortgage servicers are exempted from the definition of "debt collector" under the FDCPA.  *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 535 (5th Cir. 2016) ("[T]he plain language of the FDCPA makes clear that a debt collector does not include entities such as Wells Fargo [a mortgage servicer]."); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include … a mortgage servicing company … as long as the debt was not in default at the time it was assigned.").

---

[44] R. Doc. 10-1 at 10.
[45] *Id.* at 11.

Winch states in his complaint that "Freedom Mortgage Corporation is a national mortgage servicer."[46]  Further, he explains that his "first delinquent installment occurred with the July 1, 2025 payment on his Freedom-serviced FHA loan," indicating that the loan was serviced by Freedom before it became delinquent.[47]  Thus, according to Winch's own complaint, Freedom is a mortgage servicer to whom the debt was assigned before it was in default, so Freedom does not meet the statutory definition of a "debt collector."

Winch's arguments in response are unpersuasive.[48]  First, Winch fails to make apparent to this Court why any "misleading statements about the legal status of the debt" by Freedom or HWM's identification of itself as a debt collector have any relevance to Freedom's status as a debt collector.  Second, his argument that "[t]he Fifth Circuit has held that entities enforcing security interests can still be subject to the FDCPA if they otherwise [do not] meet the definition of a debt collector," relying on *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006), is a nonstarter.[49] *Kaltenbach* is distinguishable.  There, the Fifth Circuit held that an attorney hired only to enforce a security interest against a plaintiff, not collect a debt from the plaintiff, could be liable under the FDCPA because the attorney satisfied 15 U.S.C. § 1692a(6)'s general definition of a "debt collector," and "a party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector." *Kaltenbach*, 464 F.3d at 529.  As this Court has just explained, Freedom is exempt from § 1692a(6)'s general definition of a "debt collector."  Accordingly, Winch's FDCPA claim against Freedom is dismissed with prejudice, as amendment would be futile.

   **3. Winch's claim against Freedom for violations of the Real Estate Settlement Procedures Act and Regulation X (Count III) is dismissed without prejudice**

---

[46] R. Doc. 1 at 3.
[47] *Id.* at 7.
[48] R. Doc. 11 at 6.
[49] *Id.*

**because the Complaint fails to plead the necessary elements of the cause of action he asserts and because the claim fails to satisfy Rule 8's pleading requirements.**

Winch's RESPA claim against Freedom, Count III of his complaint, arises from three allegations: (1) that Freedom committed "servicing errors" as defined in 12 C.F.R. § 1024.35(b); (2) that Freedom violated 12 C.F.R. § 1024.41(f)'s anti-dual-tracking provisions by moving toward foreclosure while he remained eligible to cure and no lawful acceleration had occurred; and (3) that Freedom's escrow analyses and fee assessments violated 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.17.

Title 12 C.F.R. § 1024.41 (a part of Regulation X, which implements RESPA) regulates loss mitigation procedures of loan servicers. Borrowers may institute a civil action to enforce the provisions of § 1024.41, pursuant to section 6(f) of RESPA. *See* 12 C.F.R. § 1024.41(a). A loan servicer is required to comply with § 1024.41 with respect to "a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." *Id.* § 1024.41(i); *see Solis v. U.S. Bank, N.A.*, 726 F. App'x 221, 223 (5th Cir. 2018); *Wentzell v. JPMorgan Chase Bank, N.A.*, 627 F. App'x 314, 318 n.4 (5th Cir. 2015). Freedom argues that Winch's RESPA claim should be dismissed because Winch does not allege any facts related to his loan modification request, including when and how it was submitted; what documents were included; or that it satisfied the requirements of 12 C.F.R. § 1024.41.[50]

The Fifth Circuit has affirmed a Rule 12(b) dismissal of a RESPA claim based on violations of § 1024.41 where plaintiffs "failed to allege that [a loss mitigation] application was their first complete loss mitigation application" and that the application was complete. *Solis*, 726 F. App'x

---

[50] R. Doc. 10-1 at 7-8.

at 223.  With respect to the RESPA claim arising from a violation of § 1024.41, Winch generally alleges that Freedom improperly applied certain loss-mitigation amounts to his remaining loan balance, but there are no specific factual allegations in Winch's complaint of a completed loss mitigation application or that any loss mitigation application was the first loss mitigation application he submitted.  As a result, Winch's RESPA claim arising from violations of 12 C.F.R. § 1024.41(f) fails at the Rule 12(b)(6) stage.

Winch provides more facts in his opposition to Freedom's motion to dismiss regarding the transmission of the loss mitigation application, but any allegations made in his opposition memorandum are insufficient to defeat a Rule 12(b)(6) motion to dismiss his complaint.  *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) ("When deciding a Rule 12(b)(6) motion to dismiss, the district court is limited to the allegations set forth in the complaint.").  Winch has not stated a claim under RESPA for a violation of § 1024.41 in his complaint, and the Court need not decide whether Winch's allegations in his opposition memorandum, along with the exhibits attached thereto, are sufficient to state such claim.

Winch also asserts that his RESPA claim arises from Freedom's violations of 12 C.F.R. § 1024.35.[51]  "Section 1024.35 requires a servicer of a loan to furnish a written response to a notice of error 'for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'"  *Solis*, 726 F. App'x at 222 (quoting 12 C.F.R. § 1024.35(a)).  Winch's complaint, however, fails to allege that he provided any written notice of error to Freedom.  As a result, Winch has failed to state a claim under § 1024.35.  *See id.*

---

[51] R. Doc. 1 at 25.

14

(affirming dismissal of plaintiff's claim arising under § 1024.35 because plaintiffs failed to allege they provided written notice of error to their loan servicer).

Finally, Winch asserts that his RESPA claim also arises from violations of 12 C.F.R. § 1024.17 for Freedom's "fail[ure] to conduct accurate escrow analyses and improperly assessed fees."[52]  Section 1024.17 "sets out the requirements for an escrow account that a lender establishes in connection with a federally related mortgage loan."  12 C.F.R. § 1024.17(a).  There are no fewer than ten subsections of § 1024.17 that impose various requirements for such escrow accounts, *see id.* § 1024.17(c)-(l), but Winch alleges only generally that Freedom's conduct was violative of § 1024.17.  And the nature of his factual allegations is not sufficiently specific to identify which provision or provisions of § 1024.17 Winch might be claiming Freedom has violated.  Therefore, because it is unclear what escrow violations Winch is alleging, he has failed to plausibly state a RESPA claim against Freedom for any violation of § 1024.17.

Having concluded that Winch does not state a plausible claim for RESPA violations, the Court need not address Freedom's argument that Winch failed to allege actual damages as a result of the RESPA violations.

### 4. Winch's claims against Freedom for violations of the Truth in Lending Act and Regulation Z (Count IV), violations of the Louisiana Unfair Trade Practices Act

---

[52] *Id.*  The Court assumes without deciding for purposes of the instant motion that there is an available private right of action under 12 C.F.R. § 1024.17.  However, it is not clear whether there is a private right of action available to borrowers for enforcement of these provisions in the Fifth Circuit.  In 1995, the Fifth Circuit held that there is no private right of action under Section 10 of RESPA.  *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995).  Since then, at least three district courts in the Fifth Circuit have concluded that, because Section 10 of RESPA is the basis for 12 C.F.R. § 1024.17, there is also no private right of action for violations of § 1024.17.  *See, e.g.*, *Daniels v. Rocket Mortg. LLC*, 2024 WL 4063559, at *3 n.1 (S.D. Miss. Sep. 5, 2024); *Ghattas v. Caliber Home Loans, Inc.*, 2021 WL 536462, at *4 (S.D. Tex. Jan. 25, 2021); *Satterfeal v. LoanCare, LLC*, 2019 WL 2857993, at *3 (M.D. La. Jul. 2, 2019).  *But see Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 443 (4th Cir. 2020) (reversing the district court's dismissal for failure to state a claim where the plaintiff's claim was brought pursuant to 12 U.S.C. § 2605 for violations of 12 C.F.R. § 1024.17).

**(Count V), and fraud (Count VIII) are dismissed without prejudice because the claims fail to satisfy the respective pleading requirements.**

Count IV of Winch's complaint alleges that Freedom violated the Truth in Lending Act and 12 C.F.R. § 1026.41 by providing statements which were inaccurate and misleading insofar as such statements "(a) included unauthorized inspection fees; (b) failed to state the correct amount required to cure; and (c) did not clearly and accurately disclose the true status of Plaintiff's account."[53] Freedom argues that Winch's TILA claims fail as a matter of law because he has failed to identify any specific TILA violations and does not plead any facts that would constitute a TILA violation by Freedom.[54] Winch responds that because his complaint "alleges inaccurate accounting of escrow balances, inspection fees, and corporate advances that distorted the reinstatement amount," he plausibly stated a claim under TILA.[55]

Title 12 C.F.R. § 1026.41 (a part of Regulation Z, which implements TILA) requires servicers to provide borrowers periodic statements for each billing cycle and sets forth requirements for such statements. 12 C.F.R. § 1026.41(a)(2). Three different subsections of § 1026.41 impose requirements for the timing, form, and content and layout of such periodic statements. *See id.* § 1026.41(b)-(d). Again, Winch neither identifies a specific subsection of § 1026.41 that Freedom has supposedly violated or makes allegations that are sufficiently specific for the Court or the defendants to identify the subsection under which Winch's claim arises. As a result, Winch's TILA claim against Freedom fails to meet the pleading requirements of Rule 8.

In Count V, Winch asserts a claim against all defendants for violations of the Louisiana Unfair Trade Practices Act.[56] Freedom moves to dismiss this Count because Winch's complaint

---

[53] R. Doc. 1 at 26.
[54] R. Doc. 10-1 at 14-15.
[55] R. Doc. 11 at 6.
[56] R. Doc. 1 at 27.

does not contain sufficient factual allegations to state a claim for relief, and Winch responds that his allegations that Freedom forced bundled payments, blocked access to the online payment portal, misrepresented foreclosure status, assessed inspection fees, and obscured reinstatement amount to plausibly pleaded unfair trade practices.[57]

Under LUTPA, it is unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405; *see also IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018). To recover under LUTPA, a "plaintiff must 'prove some element of fraud, misrepresentation, deception, or other unethical conduct.'" *IberiaBank*, 907 F.3d at 839 (quoting *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002)). Like Winch's TILA claim, his LUTPA claim is not alleged with sufficient specificity to indicate that Freedom's alleged conduct amounted to "fraud, misrepresentation, deception, or other unethical conduct," especially where he concedes that his loan became delinquent.[58] In other words, Winch has not satisfactorily alleged reasons why Freedom was not entitled to take the actions it took against him after he defaulted or why Freedom was required to offer him loan mitigation options. Consequently, Winch's LUTPA claim is dismissed without prejudice.

Finally, Winch fails to state a claim for fraud in Count VIII. Freedom argues that Winch's complaint does not plead facts supporting fraud with sufficient specificity to meet the heightened pleading standard. This Court agrees. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. In federal court, claims for fraud are subject to a heightened pleading standard: "a party must state with particularity the circumstances

---

[57] R. Doc. 11 at 7.
[58] R. Doc. 1 at 7.

constituting fraud or mistake." Fed. R. Civ. P. 9(b). At the very least, "a plaintiff must set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013) (alteration and quotation omitted). Winch's complaint only generally alleges that Freedom misrepresented the identity of the loss-mitigation program in which it enrolled him, misapplied loss-mitigation funds, suppressed information of its own wrongdoing, and manipulated its borrower portal, but it fails to allege with respect to any of the purportedly fraudulent activity who was involved, what they did, and when, where, and how they did it, in total disregard of the pleading requirements of Rule 9(b). As a result, Winch has failed to state a claim for fraud.

### 5. Winch's claims for declaratory judgment and injunctive relieve are dismissed without prejudice.

In Count VI, Winch asserts a claim against all defendants for declaratory judgment, and in Count VII Winch asserts a claim against all defendants for injunctive relief.[59]   Where all substantive claims have been dismissed, it is appropriate for a court to dismiss requests for declaratory judgment and injunctive relief. *See Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217-18 (5th Cir. 2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory-judgment request."); *Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (affirming dismissal of a plaintiff's claim for injunctive relief where the substantive claims have been dismissed because "an injunction is a remedy that must be supported by an underlying cause of action"). Given that all other substantive claims in the complaint are dismissed, the Court finds that there is no claim upon which declaratory or injunctive relief may be granted, and thus dismissal without prejudice of Winch's claims for declaratory judgment and injunctive relief is warranted.

---

[59] *Id.* at 28-29.

### C. Winch's Claims Against Stanley Middleman

Counts I, V, VI, VII, and VIII of Winch's complaint are also asserted against defendant Stanley Middleman, who has not joined in Freedom's motion or otherwise moved to dismiss Winch's complaint. However, courts have discretion to extend dismissal to similarly situated nonmoving defendants when the claims are integrally related, the same legal deficiency applies to all defendants, and the plaintiff has had an opportunity to respond to the motion to dismiss. *See Stanton v. Heiberg*, 2019 WL 5390612, at *4 n.6 (E.D. Tex. Jul. 25, 2019) (dismissing plaintiff's claims against the remaining, nonmoving defendants *sua sponte* where "the grounds included in the motions to dismiss form the basis for the court's *sua sponte* determination that dismissal of the same claims by [p]laintiff against the remaining [d]efendant is appropriate under Rule 12(b)(6), and [p]laintiff has already had an opportunity to respond at length to the [moving defendants'] [m]otions to [d]ismiss"), *adopted,* 2019 WL 4564834 (E.D. Tex. Sep. 20, 2019), *aff'd*, 826 F. App'x 409 (5th Cir. 2020); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss *sua sponte* some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[I]t would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants.").

The Court finds that dismissal of all counts against Middleman is also appropriate because, insofar as Winch makes nearly identical allegations against Freedom and Middleman, the claims are integrally related and the same legal deficiencies exist. Further, Winch had an opportunity to – and did indeed – respond to Freedom's motion to dismiss. Finally, Winch is not disadvantaged

by such dismissal of Middleman because the Court's dismissal of Winch's claims against Middleman is without prejudice.

### D. Leave To Amend

In his opposition, Winch requests leave to amend his complaint if the Court finds dismissal appropriate.[60]  Rule 15 of the Federal Rules of Civil Procedure allows a court to grant leave to amend "when justice so requires." The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, *unless it is clear that the defects are incurable* or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (emphasis added).

Counts I, III, IV, V, VI, VII, and VIII of Winch's complaint are dismissed without prejudice.  Winch is granted leave to file an amended complaint alleging facts to meet Rule 8's pleading requirements with respect to those counts.  Any amended complaint shall be filed within 14 days from the date this Order is issued, and failure to timely file an amended complaint curing the noted deficiencies will lead to dismissal with prejudice.

Count II of Winch's complaint is dismissed with prejudice.  This Court recognizes the gravity of a dismissal on the complaint alone.  However, the defects in Winch's complaint cannot be cured through amendment because, as a matter of law, the named defendants are not "debt collectors" under the FDCPA and thus are not subject to liability for the claims Winch asserts against them.

---

[60] R. Doc. 11 at 7.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Freedom's Rule 12(b)(6) motion to dismiss (R. Doc. 10) is GRANTED.

IT IS FURTHER ORDERED that Counts I, III, IV, V, VI, VII, and VIII of Winch's complaint are DISMISSED WITHOUT PREJUDICE.  Winch is granted leave to file an amended complaint alleging facts to meet Rule 8's pleading requirements with respect to those counts.  Any amended complaint shall be filed within 14 days from the date this Order is issued, and failure to timely file an amended complaint curing the noted deficiencies will lead to dismissal with prejudice.

IT IS FURTHER ORDERED that Count II of Winch's complaint is DISMISSED WITH PREJUDICE, as amendment would be futile.

New Orleans, Louisiana, this 6th day of April, 2026.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE