UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUSTIN LAMAR WINCH                          CIVIL ACTION

VERSUS                                      NO. 25-2469

FREEDOM MORTGAGE                            SECTION M (2)
CORPORATION, *et al.*

**ORDER & REASONS**

Before the Court is the motion of defendant Freedom Mortgage Corporation ("Freedom") to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Plaintiff Justin Lamar Winch responds in opposition.[2]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion with respect to Winch's claim arising under the Real Estate Settlement Procedures Act ("RESPA") and denies the motion with respect to Winch's breach-of-contract claim.

I.     **BACKGROUND**

This is an action for breach of contract and for violations of RESPA.[3]  Winch, an attorney proceeding *pro se*, alleges that Freedom has engaged in misconduct in the servicing and collection of Winch's federally backed mortgage loan in violation of federal law and the terms of the mortgage agreement.[4]

Winch filed the instant action on December 10, 2025, against Freedom and several other defendants.[5]  Winch asserted eight claims against the various defendants and requested class

---

[1] R. Doc. 23.
[2] R. Doc. 27.
[3] R. Doc. 22 at 7-10.
[4] *Id.* at 2-6.
[5] R. Doc. 1 at 3-4.  Although Winch originally named Stanley Middleman, Freedom's CEO, and Halliday, Watkins & Mann, P.C. ("HWM"), a law firm that conducts debt-collection activities on behalf of Freedom, as defendants in the action, both have since been dismissed.  This Court granted HWM's unopposed motion to dismiss

certification.[6]  Soon after, he sought an *ex parte* temporary restraining order to stop Freedom's state-court foreclosure proceeding, which this Court denied.[7]  Then, on March 3, 2026, Freedom moved to dismiss Winch's claims against it pursuant to Rule 12(b)(6).[8]  This Court granted Freedom's motion to dismiss, largely due to noted pleading deficiencies, but permitted Winch to amend his complaint with respect to seven of the eight counts asserted in his complaint.[9]

Winch filed an amended complaint on May 7, 2026.[10]  He names Freedom as the only defendant in the action,[11] and he asserts claims against Freedom for breach of contract (Count I) and for violations of RESPA and Regulation X (Count II).[12]  According to Winch, he executed a federally backed residential mortgage loan on February 23, 2024, and his original loan servicer transferred the loan to Freedom for servicing on November 4, 2024.[13]  Winch alleges that Freedom engaged in misconduct with respect to the servicing of his mortgage loan, including (1) assessing unwarranted property inspection fees; (2) misapplying a $22,000 COVID-19 partial claim to "inflated escrow payments for inflated taxes, late fees and excessive insurance paymets [*sic*]"; (3) failing to permit Winch to pay only certain delinquent fees and/or installments, but instead requiring him to pay the entire past-due amount; and (4) denying Winch's request for loss mitigation.[14]  Winch claims that Freedom's actions breached its obligation "to service the loan account in accordance with the terms of the parties' agreements and to perform its contractual

---

Winch's claims against it on February 27, 2026.  *See* R. Doc. 9.  On Freedom's motion, this Court dismissed Winch's claims against Stanley Middleman without prejudice on April 6, 2026.  *See* R. Doc. 16.

[6] R. Doc. 1 at 16-32.
[7] R. Doc. 6.
[8] R. Doc. 10.
[9] R. Doc. 16 at 21.
[10] R. Doc. 22.
[11] *Id.* at 1.
[12] *Id.* at 7-10.
[13] *Id.* at 2.
[14] *Id.* at 2-6 (quote at 4).

obligations in good faith," in violation of Louisiana Civil Code article 1983.[15]  Winch further says

that Freedom's conduct in servicing his loan "violated RESPA and Regulation X, including but

not limited to 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.41."[16]  Winch seeks to recover

actual damages recoverable under RESPA, statutory damages pursuant to 12 U.S.C. § 2605(f) for

Freedom's purported pattern and practice of noncompliance with the statute, and treble damages

pursuant to La. R.S. 51:1409.[17]

## II.     PENDING MOTION

First, Freedom argues that Winch's amended complaint asserts only "conclusory

allegations with no factual basis" and therefore is insufficient to withstand a motion to dismiss

under Rule 12(b)(6).[18]  Winch responds that his factual allegations are specific enough to withstand

Rule 8 scrutiny.[19]  Winch also says that Freedom, in its motion to dismiss, repeatedly disputes his

factual allegations, and that resolution of such disputes is improper at the motion-to-dismiss

stage.[20]

Second, Freedom submits that Winch's amended complaint should be dismissed because

Freedom had no duty to Winch to provide financial accommodations, such as a repayment plan,

under any law or pursuant to the mortgage agreement.[21]  Winch does not directly address this

argument in his opposition.

Third, Freedom argues that a plaintiff asserting a breach-of-contract claim must "allege an

identifiable contractual promise that Freedom failed to honor" to properly plead the claim, which

---

[15] *Id.* at 7-9 (quote at 7).
[16] *Id.* at 9-10 (quote at 10).
[17] *Id.* at 10.
[18] R. Doc. 23-1 at 4.
[19] R. Doc. 27 at 2-3.
[20] *Id.* at 8.
[21] R. Doc. 23-1 at 4-5.

3

it says Winch has failed to do.[22]   In opposition, Winch responds that his amended complaint identifies the contractual language which he alleges Freedom violated and the conduct which he says constituted a breach of the contract.[23]

Fourth, Freedom maintains that Winch's allegations of RESPA violations fail as a matter of law.   Freedom points out that Winch does not allege when or how his loan modification request was submitted, what documents he included with the request, or that the request satisfied the requirements of 12 C.F.R. § 1024.41.[24]   Freedom also says that Winch did not allege that the loan modification request he purportedly submitted was his first complete loss mitigation application.[25] Winch responds that his amended complaint does include the required specific information about his loss mitigation application because it alleges that he submitted the application, at which point Freedom provided him the opportunity to submit a complete loss mitigation package, and he provides the complete package as an attachment to the amended complaint.[26]   Winch also argues that Rule 8 does not require that he attach the loss mitigation approval letter to his complaint; instead, says Winch, it requires only that he provide sufficient factual allegations to place Freedom on notice of the claim.[27]   Finally, Winch asserts that "[w]hether [he] previously submitted a complete application" is an improperly raised affirmative factual defense.[28]

Fifth, Freedom argues that the Louisiana Credit Agreement Statute (the "LCAS"), La. R.S. 6:1121-1124, bars Winch's claims.[29]   Freedom says that the LCAS bars any claims arising from an oral credit agreement, and because Winch has not provided evidence of the COVID-19

---

[22] *Id.* at 6-7 (quote at 6).
[23] R. Doc. 27 at 4-5.
[24] R. Doc. 23-1 at 7.
[25] *Id.* at 8.
[26] R. Doc. 27 at 2.
[27] *Id.* at 2-3.
[28] *Id.* at 4.
[29] R. Doc. 23-1 at 8-11.

forbearance agreement he claims he was given, any claims arising from Freedom's compliance (or noncompliance) with any such agreement must be dismissed.[30]  Winch, in opposition, urges that his RESPA claim "arises from duties imposed by federal law upon mortgage servicers," so the LCAS is not grounds for dismissal of his complaint because (1) his claims do not arise from an oral credit agreement, and (2) his federal claims cannot be preempted by state law. [31]

III.    **LAW & ANALYSIS**

A. **Legal Standard**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads

---

[30] *Id.*
[31] R. Doc. 27 at 5-6 (quote at 5).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean*

*Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

#### 1. Winch has failed to state a plausible RESPA claim under either 12 C.F.R. § 1024.35 or § 1024.41.

##### a. Winch fails to state a claim under 12 C.F.R. § 1024.35.

Winch asserts that his RESPA claim arises in part from Freedom's violations of 12 C.F.R. § 1024.35 (a part of Regulation X, which implements RESPA).[32]  "Section 1024.35 requires a servicer of a loan to furnish a written response to a notice of error 'for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'"  *Solis v. U.S. Bank, N.A.*, 726 F. App'x 221, 222 (5th Cir. 2018) (quoting 12 C.F.R. § 1024.35(a)).

Winch's amended complaint does not state a claim under § 1024.35 because there is no allegation that Winch provided any written notice of error to Freedom.  In paragraph 25 of his amended complaint, Winch states that he reported perceived errors in Freedom's mortgage

---

[32] R. Doc. 22 at 10.

servicing to the Consumer Finance Protection Bureau (the "CFPB") and "to Freedom via telephone."[33]  Winch only claims to have reported online payment portal errors directly to Freedom via telephone, and there is no evidence or allegation of any written notice of an error to Freedom. Although Winch attaches to his complaint evidence that he sent an email to two individuals with CFPB email addresses, in which he reports two perceived errors with respect to Freedom's online payment portal,[34] written notice of error to the CFPB cannot support an action against Freedom for a violation of § 1024.35.  *See id.* (affirming dismissal of plaintiff's claim arising under § 1024.35 because plaintiffs failed to allege they provided written notice of error to their loan servicer).  As a result, Winch has failed to state a claim under § 1024.35.

### b.  Winch fails to state a claim under 12 C.F.R. § 1024.41.

Winch also asserts that his RESPA claim arises under 12 C.F.R. § 1024.41 (another part of Regulation X).[35]   Section 1024.41 regulates loss mitigation procedures of loan servicers. Borrowers may institute a civil action to enforce the provisions of § 1024.41, pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f)).  *See* 12 C.F.R. § 1024.41(a).  Winch, in his complaint, alleges that Freedom "was obligated to service [Winch's] loan in compliance with applicable federal mortgage servicing regulations, including the duty to … properly evaluate loss mitigation submissions."[36]  Winch also alleges that Freedom "failed to properly evaluate the submission and instead denied or closed the loss mitigation review without lawful justification or meaningful explanation."[37]

---

[33] *Id.* at 6.
[34] R. Doc. 22-3.
[35] R. Doc. 22 at 10.
[36] *Id.* at 9.
[37] *Id.* at 10.

The Court finds that Winch's claim under § 1024.41 must be dismissed because that section does not provide relief for the conduct Winch alleges. First, Winch contends that Freedom wrongfully denied his request for loss mitigation options. However, § 1024.41(a) expressly provides that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option," and that "[n]othing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law." Plainly, then, a mortgage servicer has no duty "to provide any borrower with any specific loss mitigation option" under § 1024.41. As a result, Winch has no claim under § 1024.41 against Freedom for a general failure to provide a loss mitigation option.

Second, Winch contends that Freedom failed to properly evaluate his loss mitigation submissions. But no provision of § 1024.41 imposes upon loan servicers a duty of care in conducting evaluations of loss mitigation applications. To be sure, the only requirement for evaluation of loss mitigation applications is found at § 1024.41(c)(1), which imposes upon servicers an obligation to evaluate the borrower for all available loss mitigation options and notify the borrower of its determination within 30 days of receipt of a complete application. Winch does not allege that Freedom's determination or notice of determination was untimely. As a result, Winch has not stated a claim under § 1024.41 for Freedom's alleged failure to properly evaluate his loss mitigation application.

Finally, Winch contends that Freedom denied his application "unilaterally" and "without reason."[38] With respect to Winch's allegation that Freedom violated RESPA by denying his

---

[38] *Id.* at 6.

application unilaterally, Winch has not stated a plausible claim for relief.  He points to no requirement anywhere in § 1024.41 that any entity – except the loan servicer (here, Freedom) – must review an individual's loss mitigation application, and the Court is not aware of one.  To the extent Winch alleges that Freedom violated RESPA by failing to provide a reason for its denial of his loss mitigation application, Winch also has not stated a plausible claim for relief.  The only provision that requires a servicer to provide the borrower a reason for its general denial of a loss mitigation application is § 1024.41(d), which provides that "[i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower … , a servicer shall state in the notice sent to the borrower … the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria."  Crucially, Winch is entitled to a notice of the reason only for a denial of "any trial or permanent loan modification option *available to the borrower*."  Although Winch alleges that his loss mitigation application was denied, Winch does not allege that any trial or permanent loan modification options were available to him.

In sum, Winch has not stated a claim for relief under § 1024.41 of RESPA.  The Court therefore need not reach Freedom's argument that Winch has failed to allege that his loss mitigation application complied with § 1024.41.  Additionally, because the Court finds that Winch has not stated a plausible RESPA claim, it need not reach Freedom's argument that the LCAS bars Winch's RESPA claim.

### 2.  Winch has plausibly stated a claim for breach of contract.

Freedom argues that Winch's breach-of-contract claim must be dismissed because Winch failed to identify a specific provision of the mortgage contract that Freedom breached.[39] Freedom cites to *Miller v. Loyola University of New Orleans*, 829 So. 2d 1057, 1062 (La. App. 2002), and *Louque v. Allstate Insurance Co.*, 314 F.3d 776, 782 (5th Cir. 2002), for the proposition that a plaintiff asserting a breach-of-contract claim must point to a specific contractual provision which he alleges the plaintiff violated.

Even assuming Winch's amended complaint omits the specific contractual provision he alleges Freedom violated, Freedom's argument fails because it overlooks recent jurisprudence regarding the federal pleading standard for breach-of-contract claims. *See Spinosa v. Foremost Ins. Co. Grand Rapids Mich.*, 2025 WL 304530, at *1 n.2 (5th Cir. Jan. 27, 2025).  In *Spinosa*, the Fifth Circuit explained that *Louque* and other decisions supporting the proposition that breach-of-contract claims require specific pleading of a breached contractual provision "appear to rely on a state court decision." *Id.*  The court, however, clarified that, while Louisiana substantive law applied in *Spinosa*, "federal law is the key to the pleading standards, and we do not require plaintiffs to plead the specific breached provision." *Id.*  Since the Fifth Circuit's decision in *Spinosa*, courts in this district have followed *Spinosa* and rejected arguments that breach-of-contract claims require specific pleading of a breached contractual provision. *See, e.g.*, *Lagarde Ltd. v. Fed. Express Corp.*, 2025 WL 2337133, at *3 (E.D. La. Aug. 13, 2025); *Tran v. Gulf Coast Bank & Trust Co.*, 2026 WL 878459, at *16 (E.D. La. Mar. 31, 2026).  This Court, too, follows *Spinosa* to hold that plaintiffs asserting a breach-of-contract claim in the Fifth Circuit need not plead the specific contractual provision that they allege defendants have breached.

---

[39] R. Doc. 23-1 at 6-7.

11

Even though Rule 8 does not require a plaintiff to allege the specific contractual provision it claims the defendant has violated, "something more than conclusory comments is required" to sustain a breach-of-contract claim. *Spinosa*, 2025 WL 304530, at *1 n.2. While the factual allegations in Winch's amended complaint are indeed thin, the complaint nonetheless sufficiently identifies specific actions on the part of Freedom which he asserts violated his contract, including the assessment of unwarranted and/or unreasonable fees and the misapplication of certain payments received from Winch, so as to plausibly state a claim for breach of contract at this pleadings stage of the case. Whether the claims can survive summary judgment is left for another day.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Freedom's motion to dismiss (R. Doc. 23) is GRANTED with respect to Winch's RESPA claim and DENIED with respect to Winch's breach-of-contract claim.

New Orleans, Louisiana, this 17th day of June, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE